### LE FEVER and another *v.* E. REMINGTON & SONS

*(Circuit Court, N. D. New York.* August 4, 1882.)

1. PATENT FOR INVENTIONS—MATERIAL ELEMENTS.
     Where the inventor regarded an element as material, those who claim under the patent cannot now be heard to say that it is immaterial.

2. IMPROVEMENT IN BREECH-LOADING ARMS.
     Patent No. 205,193, for an improvement in breech-loading fire-arms, not infringed by defendants' fire-arms.

*George W. Hey*, for plaintiffs.
*Thomas Richardson*, for defendant.

BLATCHFORD, Justice. This suit is brought on letters patent No. 205,193, granted to Daniel M. Le Fever, June 25, 1878, for an "improvement in breech-loading fire-arms." The specification states the object of the invention to be—

"To give a more perfectly fitting and permanent connection between the barrels and breech-piece than has heretofore been effected, with greater security and less liability of the breech and barrels springing apart. The barrels are connected with the breech-piece by means of certain hooks on the under side of the barrels, that are brought in contact with pins passing horizontally through the mortise in the breech-piece below the barrels, a part of which devices are old and have already been patented."

The specification then goes on to describe the inventor's "improvements thereon." Only one of them is of importance in this suit. It is described thus:

"As a further security, a projection, *k*, extends backward from the rear end of the barrels, and fits into a corresponding recess in the recoil plate similar to some other arms, the important difference being that the projection, *k*, has square shoulders on its front face, as clearly seen in figure 2, which are cut to the curve of a circle centering on pivot, *d*, corresponding with the shoul-

ders in the recess of the recoil plate. This form of shoulder, instead of being rounded or wedged, as heretofore made, which allows the barrels to spring off from the recoil in firing, securely locks the parts together."

The pivot, *d*, is the pivot pin on which the barrels turn when their rear ends are thrown up. The claim founded on the above description, and which is the claim alleged to have been infringed by the defendant, is as follows:

"(1) In breech-loading fire-arms the projection, *k*, formed with square shoulders on its sides, in combination with the recoil plate, provided with a corresponding recess, the shoulders on said projection and on the recess being curved in the arc of a circle struck from the pivot on which the barrels turn, substantially as and for the purposes described."

In the defendants' fire-arm there is a projection extending backward from the rear end of the barrels and fitting into a corresponding recess in the recoil plate. The projection has square shoulders; that is, their horizontal section is a right angle. But instead of being curved in the arc of a circle struck from the pivot on which the barrels turn, the shoulders are straight and tangential to the line of movement. In both the plaintiffs' and the defendants' arms the shoulders come up to the top surface of the barrels.

It is contended for the plaintiffs that the curving of the shoulders is immaterial, and non-essential to the operation of the device, and that the invention really consists in the square shoulders coming up to the top surface of the barrel. Evidence to show this has been introduced on the part of the plaintiffs, and evidence to show the contrary has been introduced on the part of the defendant.

It is very clear that the vertical form of the shoulders is made an element of the claim by distinct language, and as that forms a curve in the arc of a circle struck from the pivot on which the barrels turn, and is not found in the defendant's arm, the plaintiffs contend that the rectilinear shoulders in that arm are the equivalents mechanically of the curved shoulders of the patent.

If the claim had been intended to be a claim broadly to square shoulders, without reference to their vertical form, it would have been easy to make such a claim. But the claim industriously introduces the element of the vertical curving. The inventor must have regarded that as a material element, and those who claim under the patent cannot now be heard to say that it is immaterial. The question cannot now be left for the domain of testimony. It is determined by the claim. Otherwise the plaintiffs are put in the position of averring that the specification contains more than is necessary to produce the

desired effect, and it is impossible to escape the conclusion that this was done for the purpose of deceiving the public, because the presumption is that the claim would not have been allowed in any broader form than that in which it appears.

The patent to Gundersen of December 30, 1873, shows a barrel constructed with an extension rib, on which are found shoulders which are rectangular in a lateral direction, and engage with corresponding shoulders on the recoil plate. All the shoulders are rectilinear in a direction about tangential to the line of movement at its intersection with the upper edge of the barrel. They do not extend to the top surface of the barrel, but are covered by the extension of the rib.

In view of the Gundersen patent there was no ground for Le Fever to claim shoulders rectangular in their horizontal cross section, and extending out to the top surface of the barrel, without reference to their vertical form. There would have been no invention in merely prolonging the upward extent of the shoulders; so the curved vertical form of the shoulders was introduced in connection with their being square. So far as appears, the first claim was novel and is valid, but it is not infringed by the defendant, because in its arm the shoulders are rectilinear.

The bill is dismissed, with costs.